**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**PERCY LEVAR WALTON,**

        **Plaintiff,**

  **v.**                                **ACTION NO. 2:06cv258**

**GENE M. JOHNSON, Director,**
**Commonwealth of Virginia**
**Department of Corrections,**

**GEORGE M. HINKLE, Warden,**
**Greensville Correctional Center,**

**LORETTA K. KELLY, Warden,**
**Sussex I State Prison,**

**and**

**UNKNOWN EXECUTIONERS,**

        **Defendants.**

### OPINION AND DISMISSAL ORDER

This matter comes before the court on defendants' motion to dismiss the complaint pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. §§ 1997e et seq. Since plaintiff has failed to exhaust his administrative remedies as required by the PLRA, defendants' motion to dismiss is **GRANTED**.

### I. Factual and Procedural History

On October 7, 1997, in the Circuit Court for the City of Danville, Virginia, plaintiff Percy Levar Walton ("Walton") pled guilty to and was convicted of four counts of capital murder, among

other offenses. On October 31, 1997, the trial court imposed three death sentences for three of the capital murder convictions.[1] After the capital murder convictions and death sentences were affirmed by the Supreme Court of Virginia, Walton v. Commonwealth, 501 S.E.2d 134 (Va. 1998), cert. denied, 525 U.S. 1046 (1998) (mem.), Walton twice petitioned the United States District Court for the Western District of Virginia for a writ of habeas corpus. Neither petition for a writ of habeas corpus was successful. See Walton v. Johnson, 306 F. Supp. 2d 597 (W.D. Va. 2004), as reconsidered in 318 F. Supp. 2d 345 (W.D. Va. 2004), aff'd, 440 F.3d 160 (4th Cir. 2006) (en banc), cert. denied, 126 S. Ct. 2377 (2006) (mem.); Walton v. Angelone, No. Civ. A. 7:99cv940, 2002 WL 467142 (W.D. Va. Mar. 27, 2002), appeal dismissed, 321 F.3d 442 (4th Cir. 2003), cert. denied, 539 U.S. 950 (2003) (mem.).[2]

On April 20, 2006, after the United States Court of Appeals for the Fourth Circuit affirmed the denial of Walton's second petition for habeas corpus relief, the trial court scheduled Walton's execution for June 8, 2006.[3] In Virginia, defendants

---

[1] One capital murder conviction was dismissed at the time of sentencing. See Walton v. Commonwealth, 501 S.E.2d 134, 135 n.* (Va. 1998)

[2] In these federal habeas corpus petitions, claims of incompetency to be executed, incompetency to select method of execution, and mental retardation were among the claims raised. All claims were denied.

[3] The Code of Virginia requires the trial court to set an execution date within ten days after receiving written notice from

sentenced to death are executed by either electrocution or lethal injection. Va. Code Ann. § 53.1-234 (2005). Virginia's execution statute directs that execution by lethal injection be administered in accordance with procedures developed by the Virginia Department of Corrections. See id. On April 27, 2006, Walton submitted an emergency grievance form, a regular grievance form, and an informal complaint form to the Virginia Department of Corrections' Grievance Office at the Sussex I State Prison, the facility where Walton was incarcerated. Each form challenges the chemicals and the personnel who will be administering the chemicals to be used in Walton's execution by lethal injection.

On May 11, 2006, Walton filed the instant "Complaint Pursuant to 42 U.S.C. § 1983 or, Alternatively, Petition for Writ of Habeas Corpus." In this pleading, Walton claims that his execution under Virginia's execution procedures will violate his constitutional right to be free from cruel and unusual punishment. Walton contends that "Virginia leaves the design and implementation of all aspects of the lethal injection protocol to the Defendants," Compl. ¶ 48, and alleges that this protocol, which calls for the injection of three chemicals in sequence, lacks sufficient safeguards to ensure that he will be properly anaesthetized by the first chemical, so that he will not "experience the terror and blinding

---

the Attorney General or the attorney for the Commonwealth that the United States Court of Appeals has affirmed the denial of habeas corpus relief. See Va. Code Ann. § 53.1-232.1 (2005).

3

pain caused by the second and third chemicals." See Compl. ¶¶ 16-22.[4]

Since Walton has already pursued two petitions for a federal writ of habeas corpus, a district court would lack authority to consider a third petition, absent an order from the appropriate court of appeals.  See 28 U.S.C. § 2244 (1994 & West Supp. 2006). Considering this, Walton urged this court to construe his pleading, styled as either a § 1983 complaint or a habeas corpus petition, as a complaint under 42 U.S.C. § 1983.  See Compl. ¶¶ 1-2, 46. Acknowledging that a prisoner must exhaust available administrative remedies before bringing an action under § 1983, Walton pleads that he submitted three grievance forms challenging the lethal injection protocol to the Department of Corrections on April 27, 2006, but no remedy is available to him through the Department's grievance process.  See id. at ¶ 45.[5]

---

[4] Adequate qualifications for and training of executioners is the principal safeguard Walton alleges is lacking in the Department's current lethal injection protocol. See Compl. ¶ 19. He also contends that the protocol does not place executioners at a vantage point where they can determine whether the intended quantity of anesthetic is actually being delivered to the prisoner. See id.

[5] In support of his allegation that an administrative remedy is unavailable, Walton attaches a response dated June 17, 2005, from the Department of Corrections' Regional Ombudsman to a grievance challenging the Department's lethal injection procedure submitted by another prisoner named Darick Walker. See Compl. Ex. 7. Walton contends that this response evidences a formal determination by the Department that a challenge to the lethal injection procedure is a nongrievable matter. See id. at ¶ 45. However, it appears from the face of the exhibit that the Regional Ombudsman rejected Mr.

As a threshold issue, this court had to determine whether the action was one for habeas corpus or § 1983 relief. Moreover, the proper characterization of a pleading like Walton's was the very issue pending before the Supreme Court in Hill v. McDonough, No. 05-8794, cert. granted, 126 S. Ct. 1189 (Jan. 25, 2006), which was orally argued before the Court on April 26, 2006.[6] On May 22, 2006, Walton filed a motion to show cause why his execution should not be stayed, at least until the Supreme Court decided Hill, which Walton argued could have a dispositive effect on his case. Recognizing the impact that a decision in Hill could have on Walton's ability to proceed with his claims, the court entered a temporary restraining order on May 23, 2006, staying all proceedings in Walton's case for a period of ten days and directing defendants to respond to Walton's motion to show cause within the

---

Walker's challenge because Mr. Walker had failed to use the informal process to resolve his complaint in accordance with the Inmate Grievance Procedure. See id. Ex. 7; see also infra at 11-14 (discussing the Inmate Grievance Procedure).

[6] The two questions presented to the Supreme Court in Hill v. McDonough, No. 05-8794, cert. granted, 126 S. Ct. 1189 (Jan. 25, 2006), were: (1) whether a complaint brought under 42 U.S.C. § 1983 by a death-sentenced state prisoner, who seeks to stay his execution in order to pursue a challenge to the chemicals utilized for carrying out the execution, is properly recharacterized as a habeas corpus petition under 28 U.S.C. § 2254; and (2) whether, under the Supreme Court's decision in Nelson v. Campbell, 541 U.S. 637 (2004), a challenge to a particular protocol the State plans to use during the execution process constitutes a cognizable claim under 42 U.S.C. § 1983. The parties agreed that these were the issues before the Court. See Brief for Petitioner at i; Brief for Respondent at i.

ten-day period. On May 24, 2006, defendants filed a notice of appeal of the temporary restraining order.

Amidst the responses and replies that followed, which primarily addressed the propriety of a stay of execution to await the Supreme Court's decision in Hill, defendants filed a motion to dismiss Walton's complaint on May 31, 2006. Failure to exhaust administrative remedies as required by the Prison Litigation Reform Act of 1995, 42 U.S.C. §§ 1997e et seq. is among the arguments raised by defendants in support of their motion to dismiss. See Defs.' Mem. Supp. Mot. Dismiss at 13-14. To their memorandum, defendants attach copies of the emergency grievance form, regular grievance form, and informal complaint form that Walton submitted to the Grievance Office at the Sussex I State Prison on April 27, 2006. See id. Ex. 7. The prison staff members' responses to these submissions are also attached. See id. Ex. 7. Defendants contend that after Walton's informal complaint form was responded to on May 4, 2006, he had to thereafter file a regular grievance form to initiate the regular grievance process, but Walton did not do so. See id. at 14. According to defendants, exhaustion of the regular grievance process was required before Walton could file a judicial action challenging the execution procedure, yet defendants provide no other explanation or evidence as to what the regular grievance process entails. See id. at 13-14 & Ex. 7.

On June 2, 2006, Walton filed a response to defendants' motion

6

to dismiss. In his response, Walton acknowledges the authenticity of the copies of the three grievance forms and the prison staff members' responses thereto, which defendants attached to their memorandum in support of their motion to dismiss. See Pl.'s Resp. Defs.' Mot. Dismiss at 7-9. Importantly, Walton does not claim to have pursued the Department of Corrections' grievance process beyond the submission of the three forms on April 27, 2006. Instead, he renews the contention raised in his complaint that administrative remedies were unavailable to him. See id.

With the Supreme Court's decision in Hill forthcoming, and defendants' appeal of this court's May 23, 2006, temporary restraining order still pending and undecided by the Fourth Circuit, this court entered an order on June 7, 2006, staying Walton's execution, which was scheduled to occur on the following day. Defendants promptly filed a motion to vacate this court's stay of execution, which motion the Fourth Circuit granted by order entered on June 7, 2006. See Walton v. Johnson, No. 06-15 (4th Cir. filed June 9, 2006). On June 8, 2006, prior to Walton's scheduled execution, the United States Supreme Court denied Walton's application for a stay of execution and denied his petition for a writ of certiorari. See Walton v. Johnson, 126 S. Ct. 2377 (2006) (mem.). A little more than an hour before Walton's execution was to commence, Virginia's Governor Timothy M. Kaine announced the rescheduling of Walton's execution to December 8,

7

2006. See Press Release, Commonwealth of Virginia Office of the Governor, Statement of Governor Timothy M. Kaine on the scheduled execution of Percy Levar Walton (June 8, 2006) (attached as Exhibit K to Plaintiff's Supplemental Response to Defendants' Motion to Dismiss).[7]

On June 12, 2006, the Supreme Court delivered a unanimous decision in Hill v. McDonough, 126 S. Ct. 2096 (2006), holding that a prisoner's constitutional challenge to a state's lethal injection protocol could proceed as an action under 42 U.S.C. § 1983.  With the Hill case decided in Walton's favor, and Governor Kaine's reprieve mooting Walton's prayer to this court for a stay of his execution, this court entered an order on June 15, 2006, lifting the stay of Walton's execution and directing the parties to file supplemental briefs based on the Hill decision.[8]

On June 29, 2006, defendants filed a supplemental memorandum

---

[7] Governor Kaine decided to delay Walton's execution for the purpose of conducting an independent evaluation of his mental condition and competency to be executed.  See Press Release, Commonwealth of Virginia Office of the Governor, Statement of Governor Timothy M. Kaine on the scheduled execution of Percy Levar Walton (June 8, 2006); supra note 2 (stating that incompetency to be executed and mental retardation were among the claims rejected in Walton's previous petitions for habeas corpus relief).

[8] Upon lifting the stay of the case, this court denied defendants' motion to transfer the action to the United States District Court for the Western District of Virginia, which motion was filed on May 17, 2006.  The reasons for denying transfer are set forth in the court's order filed on June 15, 2006, with the primary reason being that as an action under 42 U.S.C. § 1983, jurisdiction and venue lie in this district.

providing further support for their motion to dismiss the complaint pursuant to the PLRA for failure to exhaust administrative remedies.  With their supplemental memorandum, defendants filed an affidavit of Teresa Porrovecchio, Grievance Coordinator at Sussex I State Prison.  See Defs.' Supplemental Mem. Supp. Mot. Dismiss, Ex. 2 (Teresa Porrovecchio's Aff.).  After detailing the Department of Corrections' grievance process by reference to an enclosed copy of the Department's written Inmate Grievance Procedure, Ms. Porrovecchio avers that Walton's submission of three grievance forms on April 27, 2006, did not exhaust the administrative remedies available to him through the Inmate Grievance Procedure. See id. Ex. 2 at ¶ 13.  Walton filed a supplemental response on June 29, 2006, asserting that he satisfied the PLRA exhaustion requirement, but not claiming to have pursued the Department's grievance process beyond the submission of the three grievance forms on April 27, 2006.  See Pl.'s Supplemental Resp. Defs.' Mot. Dismiss at 4.  Both parties filed replies on July 7, 2006.  As Walton has been given more than adequate opportunity to address the issue of exhaustion of administrative remedies, and the facts relevant to exhaustion are not disputed, the matter is now ripe for determination.

## II. Analysis

The exhaustion provision of the PLRA provides as follows:  "No action shall be brought with respect to prison conditions under

section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2003 & West Supp. 2006). The Supreme Court made clear in Nelson v. Campbell, 541 U.S. 637, 650 (2004), that a § 1983 action challenging an execution procedure would be an action "with respect to prison conditions" that could not be brought unless the PLRA exhaustion requirement had first been satisfied. To satisfy the PLRA exhaustion requirement, the Supreme Court held in Woodford v. Ngo, 126 S. Ct. 2378 (2006), an opinion notable not only for its holding but also for its delivery within weeks after the Hill decision, that a prisoner must properly exhaust his administrative remedies. "Proper exhaustion" under Woodford entails completion of all the steps in the state administrative process, in accordance with the applicable procedural rules. See Woodford, 126 S. Ct. at 2384-87.

A prisoner cannot avoid the PLRA exhaustion requirement by claiming that the relief he seeks is not available in state administrative proceedings. Porter v. Nussle, 534 U.S. 516, 524 (2002); Booth v. Churner, 532 U.S. 731, 736-41 (2001). Moreover, courts have no discretion to dispense with exhaustion in actions to which the PLRA applies. Nussle, 534 U.S. at 524; Booth, 532 U.S. at 739. Therefore, an action must be dismissed when the PLRA exhaustion requirement has not been satisfied. See Anderson v. XYZ

Corr. Health Servs., Inc., 407 F.3d 674, 682-83 (4th Cir. 2005) (holding that a prisoner's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant, but when failure to exhaust is apparent from the face of the complaint, the court may dismiss the complaint sua sponte); Reid v. Johnson, 333 F. Supp. 2d 543, 552 (E.D. Va. 2004) (holding that a prisoner's § 1983 action challenging Virginia's lethal injection procedure is "subject to dismissal because he has failed to exhaust his available administrative remedies for this action as required by 42 U.S.C. § 1997e(a)"), aff'd, No. 04-25 (4th Cir. filed Sept. 8, 2004).

The Virginia Department of Corrections has adopted a formal grievance process through which a prisoner may submit, among other types of grievances, a grievance that challenges the substance of a Department of Corrections' procedure. See Defs.' Supplemental Mem. Supp. Mot. Dismiss, Ex. 2 (Teresa Porrovecchio's Aff.), Enclosure A (Department of Corrections, Division of Operations, Inmate Grievance Procedure, Procedure No. 866). A written change to the challenged procedure is among the remedies available through this grievance process, provided that the prisoner complies with the Inmate Grievance Procedure. See id. Ex. 2, Enclosure A at § 7.12.

The Inmate Grievance Procedure makes plain that a prisoner is qualified to initiate the grievance process, by completing and

submitting a regular grievance form, only if he can demonstrate that he first attempted to resolve his issue informally. See id. Ex. 2, Enclosure A at § 7.13. The prisoner may attempt to informally resolve his issue by submitting an informal complaint form to the appropriate prison staff member. Id. Ex. 2 at ¶ 7. If the prisoner attempts to informally resolve his issue by submitting an informal complaint form, then he should receive a response to his informal complaint within fifteen (15) days. Id. Ex. 2, Enclosure A at § 7.13.

If the prisoner is dissatisfied with the response to his informal complaint, then he has fifteen (15) days to complete and submit a regular grievance form. See id. Ex. 2, Enclosure A at § 7.14. The regular grievance form is not properly completed unless the response that the prisoner received to his informal complaint is written in the form. See id. Ex. 2, Enclosure A at § 7.14. If the prisoner is qualified to initiate the grievance process, and the regular grievance form is properly completed and timely submitted, then the grievance is reviewed by either the Warden or Superintendent of the prison and should be responded to within thirty (30) days. See id. Ex. 2, Enclosure A at §§ 7.14-16.

If the prisoner is dissatisfied with the response that he receives at this first level of review, then he is qualified to seek a second level of review by submitting an appeal within five (5) days. See id. Ex. 2, Enclosure A at §§ 7.14-16. If the appeal

12

is properly submitted, then the grievance should be reviewed by a higher-level prison official and responded to within twenty (20) days.  See id. Ex. 2, Enclosure A at §§ 7.15-16.  If the prisoner is dissatisfied with the response that he receives at this second level of review, and his grievance challenges the substance of a Department of Corrections' procedure, then a third and final review, conducted by the Director of the Department of Corrections, is available.  See id. Ex. 2, Enclosure A at § 7.15.  The Inmate Grievance Procedure instructs prisoners that exhaustion of the regular grievance process is required before a judicial action may be brought, and the filing of an emergency grievance does not satisfy the exhaustion requirement.  See id. Ex. 2, Enclosure A at § 4.0.

It is undisputed that on April 27, 2006, Walton simultaneously filed an emergency grievance form, a regular grievance form, and an informal complaint form challenging the chemicals and the personnel who will be administrating the chemicals to be used in Walton's execution by lethal injection.  See Defs.' Mem. Supp. Mot. Dismiss, Ex. 7 (Walton's grievance forms).  The emergency grievance form submitted on April 27, 2006, was responded to on the same day, which response states that the grievance does not meet the definition of an emergency and an "informal complaint will be issued to you so you may file that." Id. Ex. 7.  Walton's regular grievance form submitted on April 27, 2006, was defective because

it did not include the <u>results</u> of an attempt to resolve his complaint informally.  <u>See id.</u> Ex. 7.  The form was returned to him on the same day that it was submitted with a written explanation from the Grievance Coordinator that the form would not be accepted for processing unless Walton could demonstrate that he first attempted to resolve his complaint informally.  <u>See id.</u> Ex. 7.

Walton's informal complaint form submitted on April 27, 2006, was reviewed and timely responded to on May 4, 2006.  <u>See id.</u> Ex. 7.[9]  The respondent, a prison staff member, states that he is not in a position to respond to Walton's challenge to the lethal injection procedure at this time.  <u>See id.</u> Ex. 7.  The response does not state that Walton's challenge to the lethal injection procedure is a nongrievable matter, but rather directs Walton to file a regular grievance form within fifteen (15) days if he is dissatisfied with the response that he received to his informal complaint.  <u>See id.</u> Ex. 7.  It is undisputed that Walton did not thereafter file a regular grievance form.  Instead, he filed the instant action on May 11, 2006.  Plainly, Walton did not complete all the steps in the grievance process, in accordance with the applicable procedural rules.  <u>See</u> Defs.' Supplemental Mem. Supp. Mot. Dismiss, Ex. 2 (Teresa Porrovecchio's Aff.) at ¶ 13 (averring

---

[9] In his response to defendants' motion to dismiss, filed on June 2, 2006, Walton expressly acknowledges the date and content of the prison staff member's response to his informal complaint form. <u>See</u> Pl.'s Resp. Defs.' Mot. Dismiss at 7-9.

14

that "Walton has not exhausted the administrative remedies available to him through the Inmate Grievance Procedure on any of the allegations in this lawsuit"). Thus, he has not properly exhausted his administrative remedies to satisfy the PLRA exhaustion requirement. See Woodford, 126 S. Ct. at 2384-87 (holding that "proper exhaustion" under the PLRA entails completion of all the steps in the state administrative process, in accordance with the applicable procedural rules); see also Booth, 532 U.S. at 734-35 (affirming dismissal of a prisoner's § 1983 action for failure to satisfy the PLRA exhaustion requirement where prisoner filed an initial grievance but did not avail himself of the later stages of administrative review).

Walton attempts to avoid the PLRA exhaustion requirement by contending that administrative remedies were unavailable to him. His contention lacks merit. First, the Supreme Court has made clear that a prisoner cannot avoid the PLRA exhaustion requirement by claiming that the relief that he seeks is not available in state grievance proceedings. See Nussle, 534 U.S. at 524; Booth, 532 U.S. 736-41. Second, a challenge to the substance of a Department of Corrections' procedure is a grievable matter, and a written change to the substance of a Department of Corrections' procedure is among the remedies available through the Department's grievance process. See Defs.' Supplemental Mem. Supp. Mot. Dismiss, Ex. 2 (Teresa Porrovecchio's Aff.), Enclosure A (Department of

Corrections, Division of Operations, Inmate Grievance Procedure, Procedure No. 866) at §§ 7.11-12; see also Reid, 333 F. Supp. 2d at 552 (holding that a prisoner's § 1983 action challenging Virginia's lethal injection procedure is "subject to dismissal because he has failed to exhaust his available administrative remedies for this action as required by 42 U.S.C. § 1997e(a)").[10]

Walton cannot avoid the PLRA exhaustion requirement, and the court is without discretion to dispense with it; therefore, the entire action must be dismissed without prejudice pursuant to § 1997e(a) of the PLRA. Given the reprieve granted by Governor

---

[10] The only evidence that Walton offers in support of his contention that administrative remedies are unavailable to him is an out-of-date response from the Regional Ombudsman to a grievance filed by Darick Walker. See supra note 5. This response from the Regional Ombudsman to another individual's grievance does not evidence a formal determination by the Director of the Department of Corrections that a challenge to the lethal injection procedure is a nongrievable matter. See id. (observing that it appears from the face of the response that the Regional Ombudsman rejected Mr. Walker's challenge because Mr. Walker had failed comply with the Inmate Grievance Procedure). Walton does not allege or present evidence that the Department of Corrections informed him that his challenge is nongrievable.

Interestingly, in his most recent submission, Walton asserts that his challenge is nongrievable because the lethal injection procedure is actually a matter within the control of the Board of Corrections, rather than the Director of the Department of Corrections. See Pl.'s Reply Defs.' Supplemental Mem. Supp. Mot. Dismiss at 5-7. Not only is this assertion contradicted by Walton's complaint and other pleadings, which allege that "Virginia leaves the design and implementation of all aspects of the lethal injection protocol to the Defendants," Compl. ¶ 48, if Walton actually believes that the lethal injection procedure is a matter within the control of the Board of Corrections, rather than the Director of the Department of Corrections, then he is suing the wrong defendants.

16

Kaine, Walton now has ample time to pursue a challenge to the Department of Corrections' lethal injection protocol through the Department's own grievance process, which process may, in fact, be best suited to address Walton's challenge. <u>See</u> Va. Code Ann. § 53.1-234 (placing the lethal injection procedure within the authority of the Department of Corrections); <u>Woodford</u>, 126 S. Ct. at 2387 (declaring that Congress intended the PLRA exhaustion requirement to eliminate unwarranted federal-court interference with state corrections systems); <u>Nussle</u>, 534 U.S. at 524 (explaining that Congress enacted the PLRA exhaustion provision to afford "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case [because] [i]n some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation").

### III. Conclusion

For the reasons stated above, defendants' motion to dismiss this action without prejudice pursuant to § 1997e(a) of the Prison Litigation Reform Act is **GRANTED**. The Clerk is **DIRECTED** to send a copy of this Opinion and Dismissal Order to counsel for all parties.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　Rebecca Beach Smith

Norfolk, Virginia

July 21, 2006